IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| WANDA D. SMITHERMAN,         ) | |
| ) | |
| Plaintiff,         ) | CIVIL ACTION NO. 3:07cv259-WC |
| ) | |
| v.         ) | |
| ) | |
| MICHAEL J. ASTRUE,         ) | |
| Commissioner of Social Security,         ) | |
| ) | |
| Defendant.         ) | |

**MEMORANDUM OPINION**

**I.    INTRODUCTION**

Plaintiff Wanda D. Smitherman (Smitherman) applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (2000) (hereinafter the Act), alleging she was unable to work because of a disability. Smitherman's application was denied at the initial administrative level. Smitherman then requested and received a hearing before an Administrative Law Judge (ALJ). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. Following the submission of new evidence, the Appeals Council voluntarily remanded the case and again considered Smitherman's request for review. The Appeals Council ultimately denied the request because after considering the additional information, it found no reason to review the ALJ's decision. The ALJ's decision consequently became the final decision of the Commissioner of Social Security

(Commissioner).[1]  See Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  The case is now before the Court for review under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge.  Pl.'s Consent to Jurisdiction (Doc. #6); Def.'s Consent to Jurisdiction (Doc. #7).  Based on the Court's review of the record and the briefs of the parties, the Court AFFIRMS the Commissioner's decision.

## II.  STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).

To make this determination,[2] the Commissioner employs a five step, sequential evaluation process.  See 20 C.F.R. §§ 404.1520, 416.920 (2006).

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

>   (1) Is the person presently unemployed?
>   (2) Is the person's impairment severe?
>   (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the *Listing of Impairments*]
>   (4) Is the person unable to perform his or her former occupation?
>   (5) Is the person unable to perform any other work within the economy?
>
>   An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The Court's review of the Commissioner's decision is a limited one. This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. Hillsman v. Bowen, 804 F.2d 1179 (11th Cir. 1986).

---

[3] McDaniel v. Bowen, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. See, e.g., Ware v. Schweiker, 651 F.2d 408 (5th Cir. 1981) (Unit A).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

## III.   ISSUES

### A.   Introduction

Smitherman was fifty-three years old and had a twelfth-grade education at the time of the hearing before the ALJ. Tr. at 411. Smitherman's prior work experience includes employment as a director of activities for a church, manager of a doctor's office and a counseling center, and production manager assistant. Tr. at 16, 78, 412, 414-16. Following the administrative hearing, the ALJ concluded Smitherman had numerous severe impairments and possessed a residual functional capacity (RFC) to perform her past relevant work. Tr. at 29-30.

### B.   Smitherman's Claims[4]

Smitherman presents two issues challenging the ALJ's decision. First, Smitherman contends the ALJ failed to fulfill his duty to develop the administrative

---

[4] The Court observes Smitherman's brief is not a model of clarity. Despite the Court's plain reading of Smitherman's brief, the Court observes it has expended an extraordinary amount of time identifying what exactly Smitherman's claims are in this matter. Pleadings which are drafted and signed by a lawyer should not leave the Court and opposing parties guessing about their construction, especially as to a matter as basic as what a party's claims are. Moreover, it is not the Court's role to make Smitherman's claims for her. Thus, the Court discusses Smitherman's claims as presented.

4

record.  Second, Smitherman argues the ALJ failed to properly evaluate Smitherman's psychological complaints.  See Pl.'s Br. (Doc. #17) at 1.  The Commissioner refutes Smitherman's contentions.  Def.'s Mem. Supp. Comm'r Decision (Doc. #18) at 4-10 (hereinafter Def.'s Br.).

Employing the five step process, the ALJ found Smitherman has not engaged in substantial gainful activity since her alleged onset date, August 3, 2002 (Step 1).  Tr. at 16, 29.  At Step 2, the ALJ found Smitherman suffered from the following severe impairments:  fibromyalgia; chronic fatigue syndrome; dysthymia, anxiety complaints; panic disorder with agoraphobia; psychological factors affecting physical health; somatization disorder; passive and avoidant personality disorder; irritable bowel syndrome; positional vertigo; and muscle tension headaches (Step 2).  Id. at 29-30.  Nonetheless, the ALJ found Smitherman did not possess an impairment or combination of impairments which met or equaled the criteria of any listed impairment set forth in the Listing of Impairments (Step 3).  Id. at 30.  But, based upon Smitherman's RFC, the ALJ found Smitherman could perform her past relevant work (Step 4).  Tr. at 30.  Consequently, Smitherman had not established her *prima facie* case, and the ALJ found Smitherman was not under a disability as defined in the Act since her alleged onset date "through the date of the decision."  Id.

IV.   **DISCUSSION**

   A.   **The ALJ Fulfilled His Duty to Develop the Record**

Smitherman argues the ALJ failed to fulfill his duty to develop the record for two reasons. First, Smitherman claims the ALJ failed to obtain additional medical evidence from Drs. Nancy Sawyer, M.D., and David McLain, M.D., (hereinafter Sawyer and McLain respectively), two treating medical sources, covering part of 2003 through early 2007. This evidence, Smitherman contends, "probably" would have made a difference in the ALJ's disability determination. Pl.'s Br. (Doc. #17) at 7. Second, Smitherman claims in denying her second request for review of the ALJ's decision, the Appeals Council failed to consider and provide an analysis of the new evidence Smitherman submitted from Drs. Sawyer and McLain. Smitherman contends these two reasons demonstrate the Commissioner and ALJ failed to fulfill their duty to "scrupulously and conscientiously probe into, inquire of and explore for all facts relevant to the disability determination." Pl.'s Br. (Doc. #17) at 3-8. The Commissioner maintains the ALJ properly developed the record, and the agency's regulations do not require the Appeals Council to explain its rejection of new evidence. See Def.'s Br. at 4-7. The Court agrees with the Commissioner.

"'It is well-established that the ALJ has a basic duty to develop a full and fair record.'" McCloud v. Barnhart, 166 F. App'x. 410, 417 (11th Cir. 2006) (quoting Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995)). Consequently, the ALJ must

6

"'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" McCloud v. Barnhart, 166 F. App'x. at 417 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)). Additionally, the claimant has the burden of producing evidence to support her disability claim. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003).

For the claimant to prevail on her contention that the ALJ failed to develop a complete record, she must show the ALJ did not have all the relevant evidence before him on the record. Under 20 C.F.R. § 416.912(d), the Commissioner is required to "develop [the claimant's] complete medical history for at least the 12 months preceding the month in which [the claimant] file[s] [the] application and to make every reasonable effort to help a claimant get medical reports from the claimant's own medical sources when permission is given." Id. Medical sources should be re-contacted when the evidence received from a source is inadequate to determine whether the claimant is disabled. 20 C.F.R. § 404.1512(e); 416.912(e). Nevertheless, the burden is on the claimant to show she is disabled and, therefore, she is responsible for producing evidence to support her application. 20 C.F.R. § 416.912(a) (stating that "[claimant] must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)"); 20 C.F.R. § 416.912(c) (stating "your responsibility. You must provide medical evidence showing . . . you have an impairment(s) and how severe it is during the time you say you are disabled[.]"); Ellison, 355 F.3d at 1276.

Smitherman filed her application for disability insurance on August 3, 2002, and, thus, the ALJ was required to develop Smitherman's medical history for the 12 months prior to August 2002.  See 20 C.F.R. § 416.912(d); see also Robinson v. Astrue, 235 F. App'x 725, 727 (11th Cir. 2007) (citing Ellison, 355 F.3d at 1276).  Smitherman makes no claim that the ALJ failed to do this; rather, her focus is on the period after her filing from part of 2003 through early 2007.  The ALJ, however, was in no way bound to develop the medical record for this period, as Smitherman contends.  Moreover, the record reveals the ALJ did attempt to develop the medical record by asking Smitherman's former counsel at the hearing on March 13, 2006, whether any additional treating medical evidence existed for the case record.  Counsel for Smitherman replied negatively:  "There appears to be nothing out."  Tr. at 410.  It defies logic that the ALJ then had the duty to "scrupulously and conscientiously probe into, inquire of, and explore for" medical evidence Smitherman represented did not exist.  Instead, Smitherman alone knew of its existence, and she failed to share that knowledge with the ALJ or produce any further medical evidence in support of her application.[5]  Thus, Smitherman is not entitled to relief on her contention that the ALJ failed to adequately develop the medical record.  See 20 C.F.R. § 416.916 (stating that "when you fail to cooperate with us in obtaining evidence, we will have to make a decision based on the information available in your case").

---

[5]The undersigned observes Smitherman first submitted the information at issue here to the Appeals Council by way of letter in February 2007, almost 9 months after the ALJ's determination.  Def.'s Mot. Remand (Doc. #11) at 1.

Smitherman also argues that had the ALJ obtained the medical evidence from Drs. Sawyer and McLain, it "probably" would have made a difference in the ALJ's disability determination. The medical evidence from Dr. Sawyer to which Smitherman refers contains treatment (or progress) notes and test results dated June 30, 2003, September 16, 2003, January 26, 2004, October 4, 2004, February 2, 2006, September 1, 2006, as well as a Physical Capacities Evaluation dated January 29, 2007.[6] Tr. at 404E-H, 404J, 404L-N, 404P.[7] The medical evidence from Dr. McLain contains treatment notes dated October 30, 2003, February 5, 2004, May 6, 2004, February 11, 2005, May 18, 2005, September 20, 2005, January 12, 2006, and June 16, 2006, as well as a Physical Capacities Evaluation dated February 7, 2007. Tr. at 404V-404LL.

Smitherman's argument must fail. With respect to any medical evidence dated

---

[6]The Court points out an ambiguity in Smitherman's argument. On the one hand, Smitherman generally argues the ALJ should have developed additional medical evidence from Dr. Sawyer, citing generally the medical evidence contained in Exhibits 404A-404MM. These exhibits cover the time period of June 30, 2003, through September 1, 2006. Smitherman's brief, however, also specifically describes the evidence as covering the period between July 15, 2004, and September 1, 2006, only. Pl.'s Br. (Doc. #17) at 4. Because it is unclear which period Smitherman would like considered, the Court will evaluate the evidence as a whole, as it must under the standard of review.

[7]Smitherman also submitted test results signed by Dr. Phillip Waktins, M.D., tr. at 404R, and several treatment notes from Dr. Pamela D. Moore, M.D., tr. at 404I, 404K, 404Q, 404S, during this time frame. Additionally, one treatment note is unsigned, dated April 28, 2003. Tr. at 404o. Although these doctors appear to practice with Dr. Sawyer at the Mitral Valve Prolapse Center, Smitherman's argument specifically discusses only Dr. Sawyer. Because Smitherman specifically does not name Drs. Moore and Watkins in her argument, the Court is loathed assume she intended to include them. Thus, the Court will not consider this medical evidence in examining Smitherman's argument.

after May 16, 2006, the date in which the ALJ entered his disability determination, this evidence would not have existed at the time the ALJ rendered his decision. Tr. at 30 (explicitly concluding Smitherman "was not under a 'disability' as defined in the . . . Act, at any time through the date of the decision."). Again, it defies logic that the ALJ would have had a duty to seek out or develop medical evidence that did not actually exist at the time of his determination. Boutwell v. Sullivan, 1992 U. S. Dist. LEXIS 11009, at *4 (S. D. Ala. July 14, 1992) ("It would be a wasteful gesture to have the ALJ look for evidence where none exists."). Thus, any medical evidence dated after the ALJ's decision is outside the relevant period; and because it did not exist, it could not have been considered by the ALJ.

With respect to the treatment notes and test results from Drs. Sawyer and McLain dated June 30, 2003, through May 16, 2006, this evidence merely indicates Smitherman received periodic, continued treatment for her symptoms. The medical evidence also indicates her systems presented normally or improved on medication. See Tr. at 404 J (noting Smitherman's systems were normal); 404L (same); 404M (noting problems with fibromyalgia syndrome, but systems were normal); 404N (noting Smitherman's systems were normal and "doing better"); 404V-404Z, 404BB-404II (noting Smitherman's diagnoses are unchanged and listing medications) 404FF (noting Smitherman has "been doing pretty well."); but see Tr. at 404AA (noting fibromyalgia syndrome and migraines worsened, while all others remained unchanged and listing medications). "A medical

condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) (quoting Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987) (footnote omitted)); see Bridges v. Bowen, 815 F.2d 622, 626 (11th Cir. 1987) (upholding Commissioner's decision as supported by substantial evidence and consistent with legal standards where plaintiff's impairments were not severe because they were mild and amenable to treatment).  Thus, the undersigned finds this evidence does not support Smitherman's proposition that it would "probably" have changed the ALJ's determination.

Smitherman's argument that the Appeals Council failed to consider and provide analysis of Drs. Sawyer's and McLain's treatment notes also lacks merit.  The applicable regulations provide for Appeals Council review of ALJ decisions in social security disability cases.  See 20 C.F.R. § 404.970.  In particular, the Appeals Council must consider "new and material evidence" presented after the ALJ's decision, "where it relates to the period on or before the date of the [ALJ's] decision." 20 C.F.R. § 404.970(b).  If qualifying new evidence is presented, the Appeals Council must evaluate the entire record, including the new evidence.  Id.  If it finds that the ALJ's decision is contrary to the weight of the evidence currently of record, it will then review the ALJ's decision.  Id.  The Appeals Council may there after adopt, modify or reverse the ALJ's decision, or it may remand the case to the ALJ.  See 20 C.F.R. §§ 404.970(b), 404.979.

Approximately three months after Smitherman filed her Complaint, the

Commissioner moved the Court to voluntarily remand the action to the agency for consideration of the new evidence. Def.'s Mot. Remand (Doc. #10). The Appeals Council's decision expressly states its set aside its original determination to consider the new information. Tr. at 4B. That evidence became part of the administrative record, tr. at 4E ("The Appeals Council has received additional evidence which it is making part of the record"), and only after considering the new evidence did the Appeals Council deny Smitherman's second request for review. See tr. at 4C, 4E (noting the Appeals Council considered the evidence from Drs. Sawyers and McLain). Nothing in the Act or the Social Security Administration's regulations require the Appeals Council to provide a detailed analysis explaining its rejection of Drs. Sawyer's or McLain's treatment records, nor has Smitherman cited any legal authority supporting this proposition. See 20 C.F.R. § 404.970(b); see also Martinez v. Barnhart, 444 F.3d 1201, 1207-08 (10th Cir. 2006) (rejecting Martinez's argument that the Appeals Council erred in failing to specifically discuss treatment records submitted after the ALJ's determination); Ridings v. Apfel, 76 F. Supp. 2d 707, 709 (W.D. Va. 1999) (concluding the Appeals Council is not required to give a detailed assessment of its reasons for denying a request for review after it has considered new evidence). Thus, as the Commissioner argues, the Appeals Council is not expressly required to state its rationale for denying review. See 20 C.F.R. § 404.970(b). It therefore follows that the Appeals Council fulfilled its duty under the regulations to "scrupulously and conscientiously probe into, inquire of and explore for all facts

relevant to the disability determination.

### B. The ALJ Properly Evaluated Smitherman's Psychological Complaints

Last, Smitherman argues the ALJ failed to properly evaluate Smitherman's psychological complaints, because the ALJ did not explain the inconsistency between Smitherman's Global Assessment of Functioning[8] score of 40 and Dr. Randolph's medical source opinion form which indicated no impairment of any vocational consequence. Smitherman also argues he did not explain the weight, if any, afforded to Smitherman's GAF score. Pl.'s Br. (Doc. #17) at 9-13. Smitherman's argument relies on the Eleventh Circuit's McCloud decision. 166 F. App'x at 410. The Commissioner distinguishes McCloud and argues the ALJ properly evaluated Smitherman's psychological complaints by relying on the narrative statements of the consulting sources as well as Smitherman's lack of psychiatric care in rendering his decision. Def.'s Br. (Doc. #18) at 8, 10.

In McCloud, the Eleventh Court addressed, among others, the issue whether the ALJ properly considered a psychologist's report containing McCloud's GAF score of 45. 166 F. App'x at 416. Although the Commissioner conceded the ALJ erred "when he labeled McCloud's . . GAF score [of 45] as reflective of moderate symptoms," instead of "severe impairments," the Commissioner argued the ALJ's error was harmless. Id. at

---

[8]The Global Assessment of Functioning, or GAF Scale, is a numeric scale that mental health physicians and doctors use to rate the occupational, psychological, and social functioning of adults. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (Text Revision, 4th ed. 2000).

418. Because the Court could not "determine from the record what weight the ALJ placed on the GAF score of 45," it rejected the Commissioner's argument. On remand, the Eleventh Circuit directed the ALJ to "determine what, if any, weight to place on the score" of 45 "with the knowledge that a GAF score of 45 reflects severe impairments." Id. In addition, the Eleventh Circuit found "the ALJ failed to consider McCloud's GAF score of 48 from June 2000, which occurred just days before she filed for [disability] benefits, when determining whether she was disabled." Id. Thus, the Eleventh Circuit remanded the case for the ALJ to consider what weight to accord June 2000 GAF score. Id.

Here, after summarizing Drs. Dana Davis (Davis), Ph.D., and Christopher Randolph (Randolph), M.D., consultative examination findings,[9] which included Smitherman's GAF score of 40, the ALJ addressed Smitherman's psychological complaints. Tr. at 23-25, 28. The ALJ did not find Smitherman's complaints credible, nor did the ALJ find those complaints supported by the cumulative record evidence. Id. at 28. In particular, ALJ Jerome L. Munford (Munford) found as follows:

> [Smitherman] has not required pyschotheraphy and medication treatment at a mental health center. She has not required any psychiatric hospitalizations for a debilitating mental condition. [Smitherman] has required some changes in her psychotropic medication regimen on account of adverse medication side effects, and it is clear such changes resulted in an improvement in her condition, such that when she was initially examined by Dr. McLain in February 2003, he felt that there were no obvious signs of depression, anxiety or agitation. One month later,

---

[9]The Court observes Smitherman does not object to the ALJ's summary of these two doctors' examination findings.

    her depression was considered stable on Wellbutrin. In July 2003, [Smitherman] was evaluated as having an adjustment disorder with mild symptoms of anxious and sad mood, secondary to her chronic medical problems. Two years later, Dr. Randolph found no evidence of a cognitive impairment that would constitute psychiatric disability. He completed a mental medical source opinion form showing . . . [Smitherman] to have no restrictions in social functioning or performing daily activities. Dr. Chastain found . . . [Smitherman] to be alert and oriented. [Smitherman] demonstrated good cognition. Accordingly, the credible evidence establishes that . . . [Smitherman] experiences no more than mild to moderate restrictions of activities of daily living, maintaining social functioning, maintaining concentration, persistence, or pace and episodes of decompensation.

Tr. at 28.

    The ALJ's analysis clearly stated he considered all record evidence concerning Smitherman's psychiatric complaints in rendering his decision. While Smitherman's argument points out an apparent inconsistency between Smitherman's GAF score and the psychological medical evidence, the ALJ's discussion of her psychological complaints clearly and accurately discusses the GAF score of 40 as well as the psychological medical evidence as a whole. Tr. at 23-25, 28. Additionally, although not expressly stated, one can reasonably infer from the ALJ's analysis that he did not find Smitherman's GAF score controlling and afforded that evidence little to no weight, as compared to the record evidence as a whole. Thus, unlike McCloud, the Court is able to determine, based on the record, the weight the ALJ placed on Smitherman's GAF score of 40.[10] For these reasons, the undersigned finds McCloud distinguishable and concludes remand is not warranted on this ground.

---

    [10]The Court also notes, unlike in McCloud, the ALJ here considered all identified GAF scores in the record.

## V.  CONCLUSION

The Court has carefully and independently reviewed the record and concludes the decision of the Commissioner is supported by substantial evidence.  That decision is affirmed.  A separate order will issue.

DONE this 10th day of April, 2008.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

**1.** **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

(a) **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

(b) **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

(c) **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

(d) **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

(e) **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

Rev.: 4/04

2. **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

   (a) **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

   (b) **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

   (c) **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

   (d) **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

   (e) **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3. **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4. **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).